UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TONY DARNELL HARRIS #366934,

    Plaintiff,

v.

UNKNOWN FELDPAUSCH,

    Defendant.
_____/

Case No. 2:17-cv-00024

Hon. Maarten Vermaat
U.S. Magistrate Judge

## **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

### **Introduction**

This is a civil rights action brought by former state prisoner Tony Darnell Harris pursuant to 42 U.S.C. § 1983. Harris alleges that Defendant, Aaron Feldpausch, violated his Eighth Amendment right to be free from cruel and unusual punishment while Harris was incarcerated at the Chippewa Correctional Facility (URF) and Feldpausch was employed as a correctional officer there. Harris claims that Feldpausch used excessive force against him when Feldpausch intentionally closed Harris in his cell door while he was holding a hot tea, resulting in a second-degree burn to Harris's right hand.

This Court has jurisdiction pursuant to 28 U.S.C. § 1331. The parties consented to jurisdiction by a U.S. Magistrate Judge (ECF No. 56) and agreed to a bench trial. A bench trial was held on July 19, 2019. The Court heard testimony from both parties.

1

Upon consideration of all of the evidence and arguments presented, the Court finds that Harris has failed to prove by a preponderance of the evidence that Feldpausch violated his Eighth Amendment right to be free of cruel and unusual punishment.

**Findings of Fact and Conclusions of Law**

During evening recreation on July 2, 2016, Harris was let out of his cell in order to use the microwave. On his way to the microwave, Harris observed Feldpausch operating the control panel for Harris's housing unit. This panel was comprised of switches that opened and closed each cell door in the housing unit. The panel was located twenty to thirty feet from Harris's cell. For the cell doors to be opened or closed, a prison official had to hold the switch for a certain period of time. According to Feldpausch, the cells were not directly visible from the control panel. Thus, Feldpausch's practice was to look to see if a prisoner was standing in front of his cell, then step to the control panel and open and close the door. He also said that he relied on a clanging noise to tell when a cell door was closed.

After heating his ramen and tea, Harris returned to his cell, at which time he again observed Feldpausch operating the control panel. Upon his return, Harris noticed that his cell door was only partially open. While walking towards his cell, another inmate in the unit asked Harris whether he ate the carrots in the ramen, to which Harris responded, "like a rabbit."

As Harris walked through the entrance to his cell, the door began to close. The movement of the door caused Harris to spill his tea, which resulted in a second degree

2

burn to his right hand. Harris experienced significant pain as a result of the burn. Immediately after being burned, Harris reported the incident to an unknown correctional officer who sent him to healthcare for treatment.

According to both parties, Harris and Feldpausch had not interacted or experienced any sort of altercation prior to July 2, 2016. In addition, there were no altercations between the parties after July 2, 2016. Feldpausch never approached Harris or made any statement indicating that he harbored any animosity towards Harris.

Harris alleges that Feldpausch violated his Eighth Amendment right to be free from cruel and unusual punishment by using Harris's cell door as a form of discipline, causing Harris to sustain a second degree burn to his right hand.

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous", nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.*

To establish an Eighth Amendment claim, a plaintiff must satisfy both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). "The objective component requires the

3

pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson*, 501 U.S. at 298). "The subjective component focuses on the state of mind of the prison officials." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011).

I.  Objective Component

While all Eighth Amendment claims involve an objective and subjective component, the objective component is contextual and therefore varies depending on the claim asserted. *Hudson*, 503 U.S. at 8-9. As established by the Court in *Estelle v. Gamble*, the degree of harm necessary to satisfy the objective component depends on "contemporary standards of decency." 429 U.S. 97, 103 (1976). When prison or jail officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated, "[w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9. Thus, while the extent of an inmate's injury may help determine the amount of force used by the prison or jail official, it is not dispositive of whether an Eighth Amendment violation based on excessive force has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

As mentioned above, Harris testified that he sustained a second-degree burn where the boiling tea made contact with his right hand. He also provided a photograph of the injury twenty-five days after the incident occurred. (ECF No. 47-2, PageID.318.) Harris further testified that the first two nurses who cared for him following the incident intentionally minimized the severity of his burn when they determined that it was a first-degree burn, akin to a sunburn. (ECF No. 47-1, PageID.299-303.) However, the third nurse who treated the burn determined that it

4

was a second-degree burn rather than a first-degree burn. (*Id.* at PageID.304-310.) Although none of the medical records provided by Harris directly stated that he sustained a second-degree burn, Harris could still satisfy the objective component of his Eighth Amendment claim if he could show that Defendant acted maliciously and sadistically to cause harm pursuant to *Hudson*. 503 U.S. at 9.

II.   Subjective Component

In *Whitley v. Albers*, the Supreme Court agreed that the proper inquiry for an Eighth Amendment claim of excessive force is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." 475 U.S. 312, 320-21 (1986). Factors that are typically considered in this determination include: (1) the relationship between the need for force and the amount of force that was used, (2) the extent of any safety threat to staff or inmates, and (3) any efforts made to temper the severity of a forceful response. *Id.* at 321. However, this case is distinguishable from others involving claims of excessive force in that neither party alleged that there was any sort of safety or security concern to which Feldpausch was responding. Therefore, in order to satisfy the subjective component of his Eighth Amendment excessive force claim, Harris must simply show that Feldpausch acted maliciously and sadistically with the intent to cause harm.

Harris did not identify an incident in response to which Feldpausch was punishing him, nor did he allege that there was hostility between the parties prior to the incident. Instead, Harris testified that closing prisoners in their cell doors was

common practice in URF. According to Harris, he himself had never been closed in his cell door, but he had witnessed other prisoners being closed in their cell doors. Harris also testified to his belief that there was a conspiracy within URF. According to Harris, prison officials would minimize incidents and injuries within the facility in order to protect themselves and avoid scrutiny from other staff.

In response, Feldpausch stated that he did not intend to harm or punish Harris at all. According to Feldpausch, the cell doors had a safety function that would not allow them to close on a prisoner, thereby preventing serious injury. Feldpausch also asserted that he did not remember the incident on July 2, 2016, but that he would not use the cell doors as a method of punishment. Finally, Feldpausch testified that he was not aware of any conspiracy by prison officials to cover up or minimize incidents while at URF.

While the undersigned is certainly sympathetic to the pain that Harris experienced, there is no evidence to suggest that Feldpausch intentionally, maliciously, or sadistically closed Harris's cell door on him in order to cause harm. As mentioned above, both parties stated that there were never any altercations between them before or after the incident. Notably, Harris admitted that Feldpausch never made any statement suggesting that he intended to harm or punish Harris.

Harris's testimony regarding common practices or conspiracies at URF is insufficient to show that Feldpausch personally had the requisite intent necessary to satisfy an Eighth Amendment excessive force claim. Even if the Court credited Harris's claim that URF officials, as a general practice, used cell doors to harm

6

prisoners, that fact alone would not be sufficient to establish that Feldpausch intended to harm Harris on this particular occasion. *See* Fed. R. Evid. 404(b).

At most, the evidence suggests that Feldpausch may have been negligent in the operation of the control panel. Negligence is insufficient to satisfy the subjective component of an Eighth Amendment claim.

## **Conclusion**

Harris has failed to prove that Feldpausch violated his Eighth Amendment right to be free of cruel and unusual punishment. An appropriate judgment will enter.


Dated:　July 25, 2019　　　　　　　　　　　/s/ *Maarten Vermaat*
　　　　　　　　　　　　　　　　　　　　MAARTEN VERMAAT
　　　　　　　　　　　　　　　　　　　　U. S. MAGISTRATE JUDGE